J-A27026-16

2017 PA Super 221

| | |
|---|---|
| SYCAMORE RESTAURANT GROUP, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STAMPFI HARTKE ASSOCIATES, LLC | |
| Appellant | No. 2547 EDA 2015 |

Appeal from the Order May 21, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2011-34020

\*\*\*\*\*

| | |
|---|---|
| SYCAMORE RESTAURANT GROUP, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STAMPFI HARTKE ASSOCIATES, LLC | |
| Appellant | No. 2563 EDA 2015 |

Appeal from the Order May 21, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2011-34020

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

OPINION BY LAZARUS, J.:  **FILED JULY 12, 2017**

---

[*] Former Justice specially assigned to the Superior Court.

Sycamore Restaurant Group, LLC ("Sycamore"), appeals from the order, entered in the Court of Common Pleas of Montgomery County, which granted construction delay damages in its favor in the amount of $20,332.59.[1] After careful review, we affirm.

Sycamore initiated the instant action in December 2011, asserting Stampfi breached an architectural and engineering services contract with Sycamore for construction of a new restaurant. A non-jury trial was held on May 14 and 15, 2015. The court's decision, finding in favor of Sycamore in the amount of $20,332.59, plus costs, was docketed on May 22, 2015. Thereafter, Sycamore filed a post-trial motion on June 1, 2015,[2] asserting that the Court erred by failing to consider certain evidence and testimony in

---

[1] Sycamore appeals on the basis that the damages award is inadequate. Stampfi Hartke Associates, LLC ("Stampfi"), has filed a consolidated cross-appeal in this matter, arguing that damages were awarded to Sycamore in error. As discussed *infra*, Stampfi has waived all issues on appeal.

[2] We note that Sycamore timely served the motion on opposing counsel, but the certificate of service indicates it failed to provide a copy of the motion to the trial court at the same time. **See** Pa.R.C.P. 227.1(f) ("The party filing a post-trial motion shall serve a copy promptly upon every other party to the action and deliver a copy to the trial judge."). However, the court considered the motion to be timely and Stampfi did not object. Accordingly, we find the motion adequately preserved Sycamore's issue raised on appeal. **See Watkins v. Watkins**, 775 A.2d 841, 845 n.1 (Pa. Super. 2001) ("Whenever a party files post-trial motions at a time when the court has jurisdiction over the matter but outside the ten-day requirement of Pa.R.C.P. 227.1, the trial court's decision to consider the motions should not be subject to review unless the opposing party objects." (quoting **Mammoccio v. 1818 Market Partnership**, 734 A.2d 23, 27 (Pa. Super. 1999)).

reaching its decision, and thus, the damages award is inadequate. Stampfi filed a post-trial motion on July 1, 2015, asserting that the court erred in awarding damages to Sycamore.[3] The court denied both post-trial motions on August 4, 2015, and entered judgment in favor of Sycamore on August 12, 2015. Sycamore and Stampfi each filed timely notices of appeal and court-ordered concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Sycamore raises the following question for our review:

> Did the lower court commit legal error and/or abuse its discretion, by entering an inadequate verdict in favor of Sycamore, based solely on money damages of $20,332.59 for construction completion delay (for rent and construction loan interest associated with the extra time need[ed] to complete the unanticipated rock removal and dewatering), but excluding the credible and uncontroverted evidence of additional money damages for the $197,009.12 of costs actually incurred by Sycamore for [the] unanticipated rock removal and dewatering?

Brief for Appellant, at 3.

_____

[3] We note that Stampfi's post-trial motion was untimely, since it was filed more than 10 days after Sycamore filed its post-trial motion on June 1, 2015. *See* Pa.R.C.P. 227.1(c) ("If a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion."). Additionally, Sycamore objected to the timeliness of Stampfi's post-trial motion in its answer to the motion and at argument. On this basis, the trial court found Stampfi's post-trial motion did not preserve its claims on appeal. We are constrained to agree. *See* *Kennel v. Thomas*, 804 A.2d 667, 668 (Pa. Super. 2002) (where trial court refused to address merits of appellant's issues raised in untimely post-trial motions, issues were waived and not preserved for purposes of appellate review).

- 3 -

On February 17, 2016, the trial court issued its Rule 1925(a) opinion in which it requested that this Court quash both parties' appeals. Further, the trial court declined to address the issue of damages on the basis that both parties delayed in requesting that the trial notes be transcribed.[4] This could be grounds for dismissal in our Court pursuant to Rule 1911; however, the trial court did not file its Rule 1925(a) opinion until February 17, 2016, a

_____

[4] Pursuant to Pa.R.A.P. 1911, an appellant shall request and pay for any necessary transcript in an appeal, and where a cross appeal has been taken, the cross-appellant shares the duty to file and pay for necessary transcripts. Pa.R.A.P. 1911(a), (b). The Pennsylvania Rules of Judicial Administration specify that the request for a transcript in an appeal "shall be made part of the notice of appeal." Pa.R.J.A. 5000.5(b). Further, if an appellant "fails to take the action required by . . . the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal." Pa.R.A.P. 1911(d). Indeed, in cases where the appellant has failed to request the trial transcript at any point during the pendency of the appeal, this Court has found it appropriate to dismiss the matter. *See Smith v. Smith*, 637 A.2d 622, 624 (Pa. Super. 1993) (appropriate to quash appeal where appellant challenged order of support on grounds necessitating review of hearing transcript but did not make transcript official part of record); *see also Gorniak v. Gorniak*, 504 A.2d 1262, 1264 (Pa. Super. 1986) (appeal properly dismissed where appellant failed to file order for transcript of proceedings). Instantly, both parties failed to request the trial transcript with their notices of appeal, which were filed in August 2015. On September 5, 2015, counsel for Sycamore inquired about the cost to have the trial proceedings transcribed. Counsel for both parties were informed on September 18, 2015, of the required deposit of 50 percent of the transcription costs as allowed by Pa.R.J.A. 5000.6. Stampfi's counsel ultimately paid the required deposit on January 28, 2016. The stenographer completed the transcript and filed it on February 10, 2016. The trial court correctly observes that the necessary deposit for the transcript was not paid for 7 months after the filing of post-trial motions and 5 months after the filing of the notices of appeal in this matter.

week **after** the trial transcript was completed and filed. Accordingly, we determined the trial court could have reviewed the transcript and produced a Rule 1925(a) opinion analyzing the merits of the issue raised on appeal and addressing its determination of damages. Therefore, on January 14, 2016, we remanded this case for the trial court to file a supplemental opinion addressing Sycamore's claim. On March 24, 2017, the trial court issued an opinion on remand, finding Sycamore's issue on appeal to be meritless. The same issue now before us, we proceed with our review.

Our standard in reviewing a court order entered after a bench trial is limited: "[This Court] will reverse a court order . . . only if the decision is based on an error of law or on factual findings that are unsupported by evidence of record." *Agliori v. Metropolitan Life Ins. Co.*, 879 A.2d 315, 318, p.p. (Pa. Super. 2006) (internal citation omitted).

Here, Sycamore avers the trial court erred where it did not admit change request documents that Sycamore contends prove $197,009.12 in additional damages. We disagree.

"Admissibility of evidence depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Klein v. Aronchick*, 85 A.3d 487 (Pa. Super. 2014). The court my exclude relevant evidence if its probative value is outweighed by a danger of unfair prejudice. *See* Pa.R.E. 403. "[Q]uestions regarding the admissibility or exclusion of

- 5 -

evidence are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." ***Spino v. John S. Tilley Ladder Co.***, 671 A.3d 726, 734 (Pa. Super. 1997). However, "[a]n abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Grady v. Frito-Lay, Inc.,*** 839 A.2d 1038, 1046 (Pa. 2003).

Furthermore, the proponent of evidence must satisfy the requirement of authenticating or identifying an item of evidence by proving that the item is what the proponent claims it is. Pa.R.E. 901. "A document may be authenticated, as a condition precedent to admissibility, by direct proof and/or by circumstantial evidence; proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing." ***Zuk v. Zuk***, 55 A.3d 102, 111 (Pa. Super. 2012).

First, we address Sycamore's assertion that the change request documents were admissible into evidence as modifications to the parties' Construction Contract.[5] This argument is unavailing.

---

[5] Sycamore cites no authority in support of its argument that, contrary to the contract's plain language, the change request documents should be viewed as change orders pursuant to the Construction Contract. ***See Childers v. Power Line Equip. Rentals, Inc.***, 681 A.2d 201, 211 (Pa. Super. 1996) (issues identified on appeal but unsupported by citation to proper authorities are deemed to have been abandoned).

In interpreting a contract, this Court need not defer to the conclusions of the trial court and is free to draw its own inferences.[6] ***Southwestern Energy Production Co. v. Forest Resources, LLC***, 83 A.3d 177 (Pa. Super. 2015). In interpreting the language of a contract, courts attempt to ascertain the intent of the parties and give it effect. ***LJL Transp., Inc. v. Pilot Air Freight Corp.***, 962 A.2d. 639, 648 (Pa. 2009). When the words of an agreement are clear and unambiguous, the court ascertains the intent of the parties from the language used in the agreement, which it will give its commonly accepted and plain meaning. ***Id.*** We must construe a contract only as written and may not modify plain meaning under the guise of interpretation. ***Southwestern Energy***, 93 A.3d at 183.

> Paragraph 7.2.1 of the Construction Contract reads as follows:
>
> A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:
>
> > [1.]   change in the work[;]
> > [2.]   the amount of the adjustment, if any, in the Contract Sum; and
> > [3.]   the extent of the adjustment, if any, in the Contract Time.

General Conditions of the Contract for Construction, 4/3/08, at 23. Stampfi agreed to provide Sycamore the following services: "architectural design, documentation, structural engineering, interior design, mechanical,

---

[6] The trial court did not address this issue in its Rule 1925(a) opinion.

electrical, plumbing drawings and construction administration." Professional Services Agreement, 8/13/07, at 2.

Reading the plain language of the Construction Contract and Professional Services Agreement together, we find the change request documents are not modifications to the Construction Contract. **See Huegel v. Mifflin Const. Co., Inc.**, 796 A.2d 350, 354 (Pa. Super. 2002) ("Where several instruments are made as a part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other."). The plain language of the two contracts reveals the intent of the parties was for the architect, Stampfi, not the contractor, Designline, to prepare Change Orders. Additionally, the owner, contractor and architect are not signatories to the change request documents proffered by Sycamore pursuant to the construction contract, nor do they specify the adjustments in the contract time.

Next, Sycamore argues that the trial court should have considered the testimony of Sycamore's sole witness, managing partner Robert Stein, regarding the additional costs of rock removal and dewatering, even assuming *arguendo*, it was proper for the trial court to rule that the change request documents were inadmissible. At trial, Sycamore argued the change request documents were admissible under two exceptions to the hearsay rule: as a statement against interest of an unavailable witness, Pa.R.E. 804(b)(3), and as a business record, 803(6). On remand, the trial court

determined that the change request documents purporting to show rock removal and dewatering costs were inadmissible pursuant to Pa.R.E. 804 and/or 803. We agree.[7]

The hearsay exception for an unavailable declarant provides, in relevant part:

> **(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:
>
>> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
>>
>>> (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4)
>
> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
>> (3) *Statement Against Interest*. A statement that:
>>
>>> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true, because, when made, ***it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability[.]***

---

[7] Sycamore does not raise these issues in their brief, however, we find these particular issues are germane to our analysis of whether the trial court erred in not considering Stein's testimony regarding rock removal and dewatering costs.

Pa.R.E. 804 (emphasis added). The proponent of a statement made by an unavailable declarant must establish the proponent took reasonable measures to procure the declarant's attendance. ***Consolidated Rail Corp. v. Delaware River Port Authority***, 880 A.2d 628, 631 (Pa. Super. 2005). Declarations against pecuniary or proprietary interest are admissible as a hearsay exception, which, as a threshold matter, require a finding of unavailability of the declarant. ***See Heddings v. Steele***, 526 A.2d 349, 352 (Pa. 1987).

Here, Designline's unavailability is irrelevant. The change request documents do not constitute statements that fall under any of the Rule 804(b) exceptions. Stampfi is not the declarant of the statements (i.e., change request documents) proffered by Sycamore, contradicting Sycamore's assertion that, collectively, the change request documents constitute "a statement against [Stampfi's] interest." N.T. Trial, 5/14/17, at 117. As the trial court noted, the change request documents are "at best, statements by Designline." N.T. Trial, 5/14/17, at 118.

The business records exception provides, in relevant part:

(6) **Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation,

- 10 -

and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

For purposes of Pa.R.E. 803(6), while a qualified witness need not have personal knowledge, the individual must be able to provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness. *Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.*, 77 A.3d 1, 13 (Pa. Super. 2013). Merely characterizing a document as a business record is insufficient to justify its admission, because a business record, which contains multiple levels of hearsay, is admissible only if each level falls within a recognized exception to the hearsay rule. *Birt v. Firstenergy Corp.*, 891 A.2d 1281, 1291 (Pa. Super. 2006). Furthermore, while a qualified witness need not have personal knowledge, the individual must be able to provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness. *Keystone Dedicated Logistics*, 77 A.3d at 1. In evaluating the trustworthiness of business records, the court will look to the sources of the information therein, method and time of

preparation, and the qualifications of the custodial witness. ***See Commonwealth Financial Systems, Inc. v. Smith***, 15 A.3d 492 (Pa. Super. 2011).

At trial, Sycamore asserted that the "change orders, once they were delivered to Sycamore, became Sycamore's business records." N.T. Trial, 5/14/15, at 15. We find ***Commonwealth Financial Systems*** instructive. There, NCOP Capital (NCOP) purchased the credit card debt of the appellee, Larry Smith, from Citibank. Later, appellant, Commonwealth Financial Systems (CFS), purchased Smith's credit card debt from NCOP. After a verdict was entered in Smith's favor in an action to collect credit card debt, CFS appealed, contesting the trial court's failure to allow the admission of business records into evidence. At trial, CFS sought to introduce documents it received, electronically, from NCOP. The trial court denied the request. CFS' only witness was the vice-president responsible for overseeing its portfolio collection division. CFS' vice president testified he was not familiar with how either Citibank or NCOP created, maintained or transmitted their business records. Additionally, CFS' vice president did not have personal knowledge of whether business records received from NCOP where prepared at or near the time of the documented events or by someone with personal knowledge. This court affirmed, citing the fact that CFS failed to establish the business records they sought to introduce were sufficiently authenticated and trustworthy. ***See Commonwealth Financial Systems***, 15 A.3d at 500

("The record also supports the trial court's finding that CFS failed to establish the trustworthiness of its documents.").

Similarly, here, Sycamore was the recipient, not the preparer, of various change requests documents prepared by Designline. Sycamore's only witness at trial was Stein, a managing partner. Sycamore typically received change requests documents by mail, maintained the documents at a construction site trailer maintained by Sycamore, copied the documents, and occasionally transmitted the documents to relevant parties via email or hand-to-hand exchange. Some of the documents were signed by an agent of Sycamore, but that agent was not present to testify at trial. Absent from the record is an account, by Stein or otherwise, of how the change orders were created and/or calculated, the methods by which Designline maintained the documents, and/or who from Designline transmitted the documents to Sycamore. *See Commonwealth Financial Systems*, 15 A.3d at 492 (trial court acted within discretion in finding documents proffered by appellant to be insufficiently authenticated and untrustworthy and thus inadmissible; custodial witness stated records had been *qualified* and had no further knowledge of records). Moreover, Stein was unable to provide circumstantial evidence corroborating the authenticity of the change order documents (e.g., bank records verifying payment of change orders from the construction lender or Sycamore). *See Keystone Dedicated Logistics*, *supra.*

In **Commonwealth Financial Systems**, CFS urged this Court to adopt the federal "rule of incorporation," which allows the trial court to admit documents prepared by a third party as business records of the acquiring business, if the business integrated the documents into its records and relied upon them. **See U.S. v. Adefehiniti**, 510 F.3d 319, 326 (D.C. Cir. 2007). However, this Court declined to adopt the rule of incorporation, on the basis that "the Pennsylvania Supreme Court has not seen fit to adopt the rule of incorporation." **Commonwealth Financial Systems**, 15 A.3d at 500. Thus, Stein's assertion that he, as a managing partner of Sycamore, was satisfied with the authenticity of the change request documents and made payments in reliance upon the change requests is also insufficient. Pa.R.E. 803(6). **Commonwealth Financial Systems**, **supra**.

In sum, the record at hand is insufficient to establish the trustworthiness of the change request documents, which, despite Sycamore's attempts to recast the documents as its own, were created by a third party. Sycamore did not corroborate Stein's testimony that it incurred $197,009.12 for the cost of rock removal with any documentation, or with the testimony of custodians from the construction lender, damages experts or other witnesses. **See Vrabel v. Commonwealth**, 844 A.2d 595 (Pa. Commw. Ct. 2004) (amount of pecuniary damages cannot be presumed but must be proved by establishment of facts). Additionally, the trial court did not err in excluding the change order documents from evidence. Consequently, the trial court had no credible evidence to discern the

appropriate amount of damages for rock removal and dewatering costs. Accordingly, we do not find that the trial court abused its discretion in discounting Stein's testimony regarding *the total amount of pecuniary damages*. As the finder of fact, the trial court was in the best position to determine the trustworthiness of the change requests documents, as well as the credibility of Stein's testimony. We shall not substitute our judgment of that of the trial court.

In light of the foregoing, we do not find that the verdict is so contrary to the evidence as to shock one's sense of justice. **See Agliori**, **supra**. The trial court did not err in granting Stampfi's motion for nonsuit and only finding Stampfi liable for costs associated with 30 days' rent and interest.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2017